UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                Case No. 20-cr-20162
                                    Honorable Linda V. Parker

D-2 RAEF HAMAED, R.Ph.,

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR ISSUANCE OF SUBPOENAS *DUCES TECUM* (ECF NO. 144) AND DENYING GOVERNMENT'S MOTION TO QUASH (ECF NO. 145)

On March 12, 2020, Raef Hamaed, R.Ph., ("Defendant") was indicted for:

(1) Conspiracy to Commit Health Care Fraud and Wire Fraud under 18 U.S.C. §

1349 (Count I), and (2) Health Care Fraud under 18 U.S.C. §1347 and 18 U.S.C. §

2 (Counts II-IX). (ECF No. 1 ¶¶ 54-62, Pg ID 15-19.).  On December 17, 2020,

Defendant filed an *Ex Parte* Motion for Issuance of Subpoenas *Duces Tecum*,

(ECF No. 74,) which the Court denied. (ECF No. 138.)  Presently before the Court

is Defendant's Motion for the Issuance of Subpoenas *Duces Tecum* (ECF No. 144.)

and the Government's Motion to Quash Defendant's Motion for Subpoena *Duces*

*Tecum*.  (ECF No. 145.)  The motions have been fully briefed.  (ECF No. 148.)

For the reasons that follow, the Court denies Defendant's motion and denies the Government's motion to quash.

## I.    Background

Defendant was a licensed pharmacist in Michigan who is alleged to have ownership interest in five pharmacies in Detroit and throughout Ohio—Eastside Pharmacy, Inc., Harper Drugs, Inc., Wayne Campus Pharmacy LLC, Pharmacy Heartland Pharmacy 1, and Heartland Pharmacy 2. ("Pharmacies") (ECF No. 1 ¶¶ 17-21, Pg. ID 6; ECF No. 144 at Pg ID 658-59.).  Between 2010 through 2019, Defendant allegedly conspired with co-defendants to defraud Medicare, Medicaid, and Blue Cross Blue Shield ("BCBS") by submitting false and fraudulent claims for prescription drugs that were not dispensed to the purported patients. (ECF No. 144 at Pg ID 659.)  As a result, the Pharmacies allegedly billed Medicare, Medicaid, and BCBS for over $6.5 million in fraudulent claims for drugs that were not in the pharmacies' inventory.  (*Id.*; ECF No. 145 at Pg ID 671-72.)

In order to calculate the monetary amount of the alleged fraudulent claims, Qlarant, the Medicare Drug Integrity Contractor for the Center of Medicare and Medicaid Services, conducted an inventory reconciliation analysis for each of the pharmacies involved in the indictment. (ECF No. 144 at Pg ID 665; ECF No. 145 at Pg ID 671.)  Initially, the Government reviewed the financial records of each pharmacy to identify the wholesalers from which the pharmacies purchased its

drug inventory. (ECF No. 145 at Pg ID 671.) The Government then asserts that it

"obtained invoices from each wholesaler that detailed each pharmacy's purchases,

including the number of drugs that each pharmacy had purchased" (*Id.*) The

information obtained was then forwarded to Qlarant to compare the wholesaler

purchase records to Medicare claims data for the pharmacies identified in the

indictment. (*Id.*) As a result of its analysis, Qlarant concluded that the pharmacies

did not purchase enough drugs to cover the number of claims that were submitted

to Medicare. (*Id.*)

On June 30, 2020, the Government maintains that it provided Defendant

with the analysis data and wholesaler records that Qlarant used for the five named

pharmacies, as well as the analysis for seven additional pharmacies that are not

named in the indictment. (*Id.* at 672.) On October 13, 2020, Defendant sent a

discovery request for wholesaler invoices for four of the pharmacies, which were

not included in the first production. (*Id.*) The Government maintains that it then

provided the requested invoices, including additional wholesaler records for four

other pharmacies on November 2, 2020.

Maintaining that he is missing additional wholesaler information that the

Government has failed to obtain in its investigation and produce, Defendant filed

this motion seeking subpoenas *duces tecum* on December 15, 2021. (ECF No. 144

at Pg. ID 659-60.) In response, the Government filed its motion to quash arguing

that Defendant's motion is not "narrowly tailored," amounting to the request being "unreasonable and oppressive." (ECF No. 145 at Pg ID 670, 674.)

## II.     Subpoena *Duces Tecum* Standard

Federal Rule of Criminal Procedure 17(c) authorizes a party to issue a subpoena *duces tecum* for the production of documents in court prior to trial for inspection by the parties and their attorneys.  Fed. R. Crim. P. 17(c).  The Supreme Court has identified four elements a moving party must show in order for a court to issue a subpoena:

> (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable, with due diligence, in advance of trial; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and (4) the application was made in good faith and is not intended as a fishing expedition.

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  Further, "a subpoena duces tecum has additional requirements of "relevance, admissibility[,] and specificity." *In re Sittenfeld*, No. 22-3694, 2022 WL 4392670, at *11 (6th Cir. Sept. 23, 2022) (quoting *United States v. Hughes*, 895 F.2d 1135, 1145-46 (6th Cir. 1990)); *see also Nixon*, 418 U.S. at 700.

## III.    Applicable Law & Analysis

As an initial matter, the Government did not address whether it has standing to challenge the issuance of subpoenas.  "The party seeking to quash a subpoena has the burden of proving that it has standing to move to quash the subpoena."

4

*United States v. D'Anna*, No. 13-20119, 2015 WL 1954490, at *9 (E.D. Mich. Apr. 29, 2015). In other words, "the Government lacks standing to challenge a subpoena to a third party if it lacks an injury in fact." *Id.* (citing *United States v. Tomison,* 969 F. Supp. 587, 596 (E.D.Cal.1997)). Here, the Government has not demonstrated the existence of an injury in fact, and as such, lacks standing to challenge the subpoena. However, the Court maintains its responsibility to "ensure that a subpoena secured under Rule 17(c) is for a proper purpose." *Id.* (citing *Bowman Dairy Co. v. United States,* 341 U.S. 214 (1951).

Defendant seeks to subpoena "all orders, invoices, and purchase history records related to the above pharmacies from . . . forty-four (44)[1] pharmaceutical wholesale distributors beginning in January 2010 and continuing through August 2019 . . . ." (ECF No. 144 at Pg. ID 659-60.) Determining whether to quash a subpoena *duces tecum* under Rule 17(c) is soundly within the trial court's discretion. *See Hughes*, 895 F.2d at 1145 (citing *Nixon*, 480 U.S. at 702) ("Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.")). It is settled law that Rule 17(c) was not intended to expand the scope of discovery in criminal cases. *See*

---

[1] The Court notes that this number has grown from thirty-five (35) to forty-four (44) since Defendant's initial *ex parte* motion for subpoenas. (ECF No. 74.) (Under Seal)

*Nixon*, 418 U.S. 698-99 (citing *Bowman Dairy Co.*, 314 U.S. at 220 (1951)) (noting that the rule's "chief innovation was to expedite trial by providing a time and place before trial for inspection of subpoenaed materials"); *see also United States v. Llanez-Garcia*, 735 F.3d 483, 494 (6th Cir. 2013) ("Rule 17(c) is not meant to provide an additional way to secure pretrial discovery."); *accord United States v. Mills*, No. 16-CR-20460, 2019 WL 76869, at *2 (E.D. Mich. Jan. 2, 2019).

Here, Defendant argues that he needs the documents for the purpose of "rebutting the Government's calculated monetary amounts of alleged overpayments" and notes that the Government "will likely heavily rely on this data." (ECF No. 144 at Pg ID 665.) However, the Government maintains that "Defendant already has in his possession the wholesaler records for the pharmacies and timeframes set forth in the Indictment." (ECF No. 145 at Pg ID 673.) Specifically, the Government asserts that on June 30, 2020, it provided Defendant with the reconciliation analysis data "for the five pharmacies named in the Indictment, as well as its analyses for seven additional pharmacies." (*Id*. at Pg ID 672.) And after Defendant sent a request for additional wholesaler invoices of four of the five pharmacies listed in the Indictment, the Government not only obtained the information and provided it to Defendant, but went further and produced the records "for four additional pharmacies." (*Id.*)

6

While the court does acknowledge that Defendant has made attempts to obtain the additional information, Defendant has not demonstrated that obtaining the records is nothing more than a "fishing expedition" to obtain additional discovery. *See Nixon*, 418 U.S. at 700. In Defendant's reply brief, he notes that Qlarant's review of the invoices "cannot be reasonably be relied on, and [he] must be permitted to *investigate* . . . the inaccuracy of the evidence used against him." (ECF No. 148 at Pg ID 694). As this District concluded, "Rule 17(c) does not provide a broad right to discovery for criminal defendants. There is no general constitutional right to discovery in criminal cases." *United States v. Reid*, No. 10-20596, 2011 WL 5075661, at *3 (E.D. Mich. Oct. 26, 2011) (citing *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977)). As such, Defendant's attempt to further "investigate" the charges against him by invoking Rule 17(c) is inapposite of what the Supreme Court held the rule's proper purpose to be: "to expedite the trial by providing a time and place before trial for inspection of the subpoenaed materials." *Bowman Dairy Co.*, 241 U.S. at 679.

Moreover, because Defendant does not attempt to limit the request for "all" of the wholesalers' records in relation to the pharmacies beyond the timeframe, the request cannot be said to be specific enough to satisfy Rule 17(c). *See, e.g., United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials, without mention of 'specific

admissible evidence,' justify the inference that the [party] is engaging in the type of 'fishing expedition' prohibited by *Nixon*."); *United States v. Al-Amin*, No. 1:12-CR-50, 2013 WL 3865079, at *7 (E.D. Tenn. July 25, 2013) ("Courts have also noted that 'any and all' requests are particularly suspect under the specificity prong of a Rule 17(c) analysis."); *United States v. Reyes*, 239 F.R.D. 591, 606 (N.D. Cal. 2006) ("Where, as here, a [party] requests any and all information related to a particular policy or procedure, courts have rejected such requests as an abuse of Rule 17(c)."). This broad request—with the hopes of discovering additional information beyond what the Government has relied upon in its Indictment and already provided to Defendants—amounts to "a quintessential fishing expedition." *Mills*, 2019 WL 76869, at *5. As such, the Court finds that the request does not satisfy the requirement for specificity under *Nixon*.

## IV.   Conclusion

For the above reasons, the Court denies Defendant's request for the issuance of subpoenas *duces tecum* and denies Government's motion to quash.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for issuance of subpoenas *duces tecum* (ECF No. 144) is **DENIED WITH PREJUDICE**, and the Government's

motion to quash (ECF No. 145) is **DENIED.**

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 3, 2022